UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                    CASE NO: 2:03-cr-31-JES-KCD

PERRY JOHNSON

_____

### OPINION AND ORDER

This matter comes before the Court on defendant's Second Motion for Reduction of Sentence (Doc. #183) filed on July 15, 2024.  The government filed a Response in Opposition (Doc. #186) on July 29, 2024, along with documents under seal (Doc. #187), and defendant filed a Reply (Doc. #195) on September 16, 2024.

*I.*

On March 19, 2003, a grand jury in Fort Myers, Florida, returned an Indictment (Doc. #21) charging defendant and Eddie Butler Cavanaugh with two counts of armed bank robbery (Counts One and Three) in violation of 18 U.S.C. §§ 2113(a) and 2113(d); using and carrying a firearm during and in relation to a crime of violence and possessing a firearm in furtherance of a crime of violence (Count Two) in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii); using and carrying a firearm during and in relation to a crime of violence and possessing a firearm in furtherance of a crime of violence (Count Four) and possessing destructive devices (pipe bombs) in furtherance of a crime in

violence (Count Five) in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(C)(i), and 924(c)(1)(C)(ii); and possession of unregistered explosives (Count Six) in violation of 28 U.S.C. §§ 5861(d) and 5871. Defendant[1] proceeded to trial and on February 2, 2004, a jury returned a Verdict (Doc. #121) of guilty on all charges. The Court granted a judgment for acquittal as to the using and carrying offense on Count Five but not the possession in furtherance offense. (Doc. #120; Doc. #186, p. 5 n.2.) On May 3, 2004, at sentencing, Count Four was dismissed on motion of the United States and defendant was sentenced to a term of 135 months on Counts One and Three, a term of 120 months on Count Six to run concurrently with Counts One and Three, a term of 10 years on Count Two, to be served consecutively to Counts One, Three, and Six, and a term of life on Count Five to be served consecutively to Counts One, Two, Three, and Six, followed by a term of supervised release. (Doc. #137.) On May 17, 2005, the convictions and sentence were affirmed on appeal. (Doc. #158); United States v. Johnson, 134 F. App'x 284 (11th Cir. 2005).

On August 24, 2007, the Court denied relief pursuant to 28 U.S.C. § 2255. (DOC. #161); Johnson v. United States, No. 2:03-

---

[1] Co-defendant Cavanaugh entered a plea pursuant to a Plea Agreement (Doc. #108) resulting in the dismissal of Counts One, Two, Five, and Six by the government and a sentence of 51 months as to Count Three and 7 years as to Count Four, to be served consecutively to Count Three. (Doc. #140.)

CR-31-FTM-29DNF, 2007 WL 2418305, at *1 (M.D. Fla. Aug. 24, 2007). On December 2, 2020, the Court denied a request for compassionate release based on defendant's health and the presence of COVID-19 at the institution, and further denied the motion based on Section 403 of the First Step Act. (Doc. #180); United States v. Johnson, No. 2:03-CR-31-FTM-29, 2020 WL 7055712, at *1 (M.D. Fla. Dec. 2, 2020).

## II.

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010). As applicable here, the Court may not modify a term of imprisonment except upon motion of the Director of the Bureau of Prisons or a motion by defendant if the Court finds "extraordinary and compelling reasons warrant such a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). After an inmate exhausts administrative rights[2], the Court may reduce a sentence after considering factors set forth in 18 U.S.C. § 3553(a) and if the Court determines that at least one of six reasons apply. Effective

---

[2] The government concedes that defendant has exhausted his administrative remedies, and the merits of the motion may be considered. (Doc. #186 at 9.)

November 1, 2023, this includes that an "unusually long sentence" had been imposed:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(b)(6). Defendant also asserts his medical circumstances warrant a reduction. U.S.S.G. § 1B1.13(b)(1). Defendant states that he is 66 years old and limited by health problems. (Doc. #183 at 3, 6.)

> (1) Medical Circumstances of the Defendant.--
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is--
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or

- 4 -

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances--

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.--The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(1), (2).

Defendant must also not be a "danger to the safety of any other person or the community" and the reduction must be "consistent with this policy statement."  U.S.S.G. § 1B1.13(a).  It is uncontested that defendant has served at least 21 years of his term of imprisonment.  (Doc. #186 at 7.)

### A. Commission Authority

As a threshold matter, the government takes the position that "[a]lthough Congress has delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the text, structure, and purpose of 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(a), and is therefore invalid."  (Doc. #186 at 12.)  The Court is not persuaded.

The Commission promulgates guidelines for a sentencing court to use in determining the sentence to be imposed and makes "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes" of Section 3553(a)(2), including modification provisions under Section 3582(c).  28 U.S.C. § 994(a)(2)(C).  "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. §

994(t). "There is no question that 1B1.13 is *the* policy statement the Commission adopted to comply with this statutory mandate…. In other words, the statutory context shows us that the Commission had an obligation to define 'extraordinary and compelling reasons' for all motions under the statute, and that the Commission did so in 1B1.13." United States v. Bryant, 996 F.3d 1243, 1255 (11th Cir. 2021) (emphasis in original) (internal citations omitted). The Court finds that the amendment to 1B1.13 was within the Commission's power. United States v. Allen, ___ F. Supp. 3d ___, No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024) ("Because the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons, this Court can accept § 1B1.13(b)(6)'s validity and applicability.").

### B. Application to Current Case

The Court follows a three-step process: (1) determine whether defendant meets the criteria for an "unusually long sentence" for a reduction in that sentence; (2) determine whether defendant is dangerous to the safety of others; and (3) apply 3553(a) factors to evaluate whether a reduction is warranted. United States v. Elie, 6:09-cr-50-ACC-DCI, Doc. #138 at 15 (M.D. Fla. May 3, 2024).

### (1) Unusually Long Sentence

Under the new "unusually long sentence" amendment, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement,

a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c). Thus, the Court may consider the impact of the change in law "where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances." AMENDMENTS TO THE SENTENCING GUIDELINES, at 7 (U.S. Sent'g Comm'n Apr. 27, 2023)(effective Nov. 1, 2023).[3]

Defendant argues that his sentence would be lower under today's guidelines and Section 403 of the First Step Act. Defendant asks that his sentence should be reduced to a mandatory minimum of 40 years. Defendant also asks that the Court consider other factors, including his age, to give him time served. (Doc. #183 at 5-6; Doc. #195 at 5.)

Under the April 23, 2004, guidelines, defendant's combined adjusted offense level was 30. Defendant had no Chapter Four

---

[3] https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023.

enhancements and a Criminal History Category of II.  The statutory provisions were a maximum term of 25 years for Counts One and Three, a mandatory consecutive term of imprisonment of 10 years to life on Count Two, a mandatory consecutive term of 25 years to life on Count Four, a mandatory consecutive term of life on Count Five, and a maximum of 10 years on Count Six.  Under the guidelines, Counts One, Three, and Six would have been 108 to 135 months, but Counts Two, Four, and Five must be determined by statute and to run consecutively.  So, the sentences of 10 years, 25 years, and life for Counts Two, Four, and Five, were required to run consecutively to term imposed for Counts One, Three, and Six.  (Presentence Report, Doc. #187-1 at ¶¶ 78, 81, 85, 109-110.)

To the extent that defendant argues that Section 403 of the First Step Act provides a basis for a reduction, he is incorrect.

> Section 403(a) of the First Step Act of 2018 prohibits district courts from engaging in one particular form of (what some have called) sentence "stacking." Specifically, and as relevant here, under § 403(a), if a defendant is charged in the same indictment with multiple counts of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and he doesn't have a previous § 924(c) conviction that has become final, the second and ensuing counts will carry only 5-year consecutive mandatory sentences, rather than the much higher consecutive mandatories that would have attached under preexisting law. See First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221-22. Significantly for our purposes, § 403(b) then provides that § 403(a)'s modified stacking rule applies to

> pre-Act convictions—but only "if a sentence
> for the offense has not been imposed as of
> [the] date of enactment." Id. § 403(b).

United States v. Hernandez, 107 F.4th 965, 2024 WL 3324992, at *1 (11th Cir. July 8, 2024).  Since defendant's sentence predates the First Step Act's enactment, the Act does not provide a basis for relief.  Section 924(c)(1)(C)(i) changed from "[i]n the case of a second or subsequent conviction under this subsection" to read "[i]n the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final", with the sentence of "not less than 25 years" remaining unchanged. Compare 18 U.S.C. § 924(c)(1)(A), (C)(i) (eff. Oct. 6, 2006 to Dec. 20, 2018) with 18 U.S.C. § 924(c)(1)(A), (C)(i) (eff. June 25, 2022).  The clarification to Section 403 amended 18 U.S.C. § 924(c)(1)(C) by striking "second or subsequent conviction under this subsection" and substituting "violation of this subsection that occurs after a prior conviction under this subsection has become final."  FIRST STEP ACT OF 2018, PL 115-391, *5221-5222, December 21, 2018, 132 Stat 5194.  Defendant's sentence was imposed long before the First Step Act was enacted and does not apply to reduce his sentence.  The government notes that if he was sentenced today, he would receive no less than 40 years of imprisonment for discharging a firearm during the first robbery and possessing a destructive device during the second robbery. (Doc. #186 at 27.)

It is undisputed that defendant's sentenced is unusually long with the consecutive life sentence.  See, e.g., United States v. Allen, No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024) (collecting cases and finding that a sentence of life is unusually long); United States v. Ware, No. 1:97-CR-00009-SCJ, 2024 WL 1007427, at *8 (N.D. Ga. Mar. 6, 2024); United States v. Harper, No. CV 1:04-CR-00218-SDG, 2024 WL 1053547, at *5 (N.D. Ga. Mar. 11, 2024) ("87 years is, for the majority of people, a literal and figurative lifetime"); United States v. Colley, No. 2:94-CR-7-RWS (1), 2024 WL 1516128, at *5 (N.D. Ga. Mar. 26, 2024) (agreeing with Allen and Ware that 55-year sentence is unusually long); United States v. Bizzell, No. 6:10-CR-145-MSS-EJK, 2024 WL 1832995, at *4 (M.D. Fla. Apr. 26, 2024) (finding 65-year sentence is by any definition unusually long); United States v. McCain, No. 3:12-cr-34-TJC-MCR, 2024 U.S. Dist. LEXIS 80070 (M.D. Fla. May 2, 2024) (granting reduction).

Although a gross disparity exists for a defendant sentenced today after the passage of the First Step Act, the amendment to Section 924(c)(1)(C) under the First Step Act specifically excluded those sentenced before its enactment, including defendant.  Courts thus far have found that a nonretroactive amendment is not itself an extraordinary and compelling reason to reduce a sentence because to do so would thwart the intent of Congress.  See United States v. Andrews, 12 F.4th 255, 261 (3d

Cir. 2021) (joining United States v. Jarvis, 999 F3d 442, 444 (6th Cir. 2021); United States v. Thacker, 4 F.4th 569, 574 (7th Cir. 2021); United States v. Loggins, 966 F3d 891, 892-93 (8th Cir. 2020)).  See also United States v. McGee, 992 F.3d 1035, 1048 (10th Cir. 2021) ("Instead, we conclude that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i).")  The Court finds that defendant has not demonstrated that an extraordinary and compelling reason exists for a reduction in sentence based on the length of the sentence alone.

**(2)  Medical Circumstances**

Defendant attached a Clinical Encounter indicating that defendant has atrial fibrillation with a history of hypertension but no history of heart attack or stroke.  (Doc. #183-1.)  The government attached additional records indicating some rectal bleeding over the last several months, some lower extremity neuropathy.  (Doc. #187-2.)  Defendant is being monitored for his health condition and he is on medication.  Defendant's condition does not impair his physical or cognitive abilities as he is ambulatory, and he understands the plan of care.  Defendant is receiving regular clinical care, including access to tests and a cardiologist.  Upon his release, defendant intends to reside in Louisiana where he will live on social security.  Defendant is not

terminal and is not experiencing deteriorating physical or mental health because of the aging process. The Court does not find extraordinary and compelling circumstances exist based on defendant's medical condition or age such that a reduction would be appropriate in light of other factors.

**(1)  Danger to Safety**

A Court may reduce a term of imprisonment only if it determines defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2). Factors the Court must consider include:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including-
>
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole,

> or on other release pending trial,
> sentencing, appeal, or completion
> of sentence for an offense under
> Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger
> to any person or the community that would be
> posed by the person's release. In considering
> the conditions of release described in
> subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of
> this section, the judicial officer may upon
> his own motion, or shall upon the motion of
> the Government, conduct an inquiry into the
> source of the property to be designated for
> potential forfeiture or offered as collateral
> to secure a bond, and shall decline to accept
> the designation, or the use as collateral, of
> property that, because of its source, will not
> reasonably assure the appearance of the person
> as required.

18 U.S.C. § 3142(g).

On February 19, 2003, Collier County Sheriff's Office received reports of explosions within one hour of the bank robbery. A drugstore parking lot had damage to a gold-colored Lexus, and the bomb squad was notified. The Sheriff's Office also responded to a report of a bank robbery at AmSouth Bank. (Doc. #187-1 (PSR) at ¶¶ 10-12.) Upon arrival at AmSouth bank, witnesses identified one bank robber as carrying a black handgun he pointed at bank employees disguised in blue medical scrubs and a false mustache and wig. The bank robber was later identified as Johnson. Johnson bound some employees with plastic tie straps, approached a teller, and asked for the branch manager by name. While co-defendant Cavanaugh was in the branch manager's office threatening

her and her family, Johnson jumped over the teller counter, displayed a firearm, and stated he was robbing the bank.  When a customer was a drive through window, Johnson stood behind the branch manager with a gun while she waited on the customer and then secured her hands and feet.  (PSR at 13, 15-16.)  After stealing $42,000, Johnson fled the scene with Cavanaugh driving and the police pursued until they deployed stop sticks.  Cavanaugh stopped before driving over them and defendants were ordered to the ground.  A firearm was observed on the passenger seat and the passenger floorboard along with a black bag.  At the vehicle stop, Cavanaugh admitted that he detonated a pipe bomb under a gold Lexus, and he reported that Johnson talked about shooting other vehicles to cause accidents and divert law enforcement.  According to Cavanaugh, Johnson also told Cavanaugh not to stop and to avoid the stop sticks by driving over a curb.  (PSR at 19-23.)  Because of the use of explosive devices, the bomb squad was deployed in various areas to render recovered devices safe.  A supermarket and neighboring businesses were evacuated. (Id. at 24.)

Cavanaugh later testified at Johnson's trial that they robbed the Royal Palm Bank on June 28, 2002, and stole $66,500.  Johnson entered that bank armed, and Cavanaugh remained in the getaway vehicle.  Johnson wore glasses and a suit, waved a firearm in the cocked position, and threatened employees of the bank that he would kill them if police responded.  Johnson told a victim teller not

to give him any dye packs or he would shoot the teller.  As she handed him the money, she heard a noise, Johnson apologized, and she realized that she had been shot in the leg.  Johnson asked for a bag to carry the money and left.  The victim was admitted and treated at the hospital.  (Id. at 30-33.)  On September 12, 2002, a deputy responded to the Royal Palm Bank after employees reported that the robber had returned.  An investigation later determined that Johnson, wearing scrubs, and Cavanaugh with a cane, had planned to rob the bank again but aborted the plan.  (Id. at 34.)

The Court must give "full consideration of the defendant's individualized circumstances" when considering whether he received an "unusually long sentence".  U.S.S.G. § 1B1.13(b)(6). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. 1B1.13(d).  Nonetheless, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id.

Defendant indicates he has completed some rehabilitative programming, he has a sister who he will live with in Louisiana, and he will retire and have social security.  Defendant argues that he is no longer the same person as he was when he was

sentenced.    Defendant  denies  any  malice  with  the  pipe  bombs

because they were meant as a distraction and not to hurt anyone.

     While defendant's incidents while incarcerated are minimal

and non-violent, and he has a supportive family, the Court finds

that  the  nature  and  circumstances  of  the  armed  robberies

establishes a potential danger to the community.

     **(2)  Section 3553(a) Factors**

     When  imposing  a  "particular  sentence"  that  is  "sufficient,

but not greater than necessary", the Court considers:

> **(1)**  the  nature  and  circumstances  of  the
> offense and the history and characteristics of
> the defendant;
>
> **(2)** the need for the sentence imposed--
>
>> **(A)**  to  reflect  the  seriousness  of
>> the offense, to promote respect for
>> the  law,  and  to  provide  just
>> punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to
>> criminal conduct;
>>
>> **(C)**  to  protect  the  public  from
>> further crimes of the defendant; and
>>
>> **(D)**  to  provide  the  defendant  with
>> needed  educational  or  vocational
>> training,  medical  care,  or  other
>> correctional  treatment  in  the  most
>> effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing
> range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing

Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Having found no applicable extraordinary or compelling reason, the Court need not address the factors individually. If there are such "extraordinary and compelling reasons" for compassionate release, the district court has the discretion to reduce the defendant's term of imprisonment after considering the applicable Section 3553(a) factors. United States v. Monaco, 832 F. App'x 626, 629 (11th Cir. 2020). "[I]f the district court finds that no extraordinary and compelling reason exists, then it cannot reduce the inmate's sentence—even if the § 3553(a) factors favor doing so.". United States v. Giron, 15 F.4th 1343, 1348 (11th Cir. 2021). The Court also found that defendant remains a danger to the community.

Accordingly, it is hereby

**ORDERED:**

Defendant's Second Motion for Reduction of Sentence (Doc. #183) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___18th___ day of September 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Defendant
Counsel of Record